cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES A. MOORE, | ) | Civil No.07cv141 IEG (AJB) |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Report and Recommendation |
| | ) | [Doc. Nos. 1, 6, 8 and 9] |
| DERRICK OLLISON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————— | ) | |

Petitioner, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with regard to his November 4, 2003 conviction for First Degree Burglary in Imperial County Superior Court case number CF-12021.  The Respondent has filed an answer [Doc. No. 6] and lodged the relevant portions of the state court record and the Petitioner filed a Traverse [Doc. No 8].  Respondents requested and were granted leave to file a supplemental answer [Doc. No. 9].  Petitioner was given until February 15, 2008 to file a supplemental traverse, but as of the date of this Order, the Court has received no filing or request for extension of time from the Petitioner. Upon a review of the record, for the reasons set forth herein, it is recommended that the Petition be DENIED.

### ***Procedural Background***

A jury found petitioner guilty of first degree burglary (Cal. Penal Code §§ 459, 462(a)).  (CT. 59.)  After a subsequent court trial, it was determined that petitioner had suffered three prior strike

convictions pursuant to California Penal Code section 1170.12(a) through (d), and section 667(b) through (i).  (CT 61.)  The court sentenced petitioner to state prison for a term of twenty-five years to life.  (CT 129.)  On February 6, 2004, appellant filed a notice fo appeal from the judgment.  (CT 129.)

In an opinion issued October 11, 2005, the California Court of Appeal, Fourth District, Division One, affirmed the judgment.  (Lodgment 17.)

Petitioner filed a petition for review with the California Supreme Court on November 14, 2005 (Lodgment 18).  Petitioner also filed a "First Amended Petition" on February 27, 2006 and a "Second Amended Petition - Grounds Four" for writ of habeas corpus on August 18, 2006 with the California Supreme Court. (Lodgment 19.) These habeas petitions were denied by the California Supreme Court on September 13, 2006. (Lodgment 21.)

### ***Discussion***

**I.       *Standard of Review***

Title 28, United States Code, § 2254(a), sets forth the following scope of review:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*,

1    529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of

2    clearly established federal law, "if the state court identifies the correct governing legal rule from this

3    Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

4    An unreasonable application may also be found, "if the state court either unreasonably extends a legal

5    principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably

6    refuses to extend that principle to a new context where it should apply." *Id.*

7        "[A] federal habeas court may not issue the writ simply because the court concludes in its

8    independent judgment that the relevant state-court decision applied clearly established federal law

9    erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." *Lockyer v.*

10   *Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).  Clearly estab-

11   lished federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's

12   decisions." *Williams*, 529 U.S. at 412.

13       Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision

14   that was based on an unreasonable determination of the facts in light of the evidence presented in state

15   court." 28 U.S.C.A. § 2254(d)(2) (West 2006).  In order to satisfy this provision, Petitioner must

16   demonstrate that the factual findings upon which the state court's adjudication of his claims rest,

17   assuming they rest on a factual determination, are objectively unreasonable.  *Miller-El v. Cockrell*, 537

18   U.S. 322, 340 (2003).

19   **II.    *Petitioner's Claims***

20       Petitioner asserts the following eight grounds for relief in the instant petition: (1) The trial court

21   erred by not requiring the prosecutor to justify dismissing the single African-American from the jury;

22   (2) The prosecutor's misconduct during closing argument constitutes reversible error; (3) Because

23   Petitioner was not allowed to exercise his right to allocution, he must be re-sentenced; (4) The trial court

24   abused its discretion in failing to dismiss strike priors; (5) Imposition of twenty-five years to life in

25   prison where the only criminal act was an unaggravated burglary constitutes cruel and unusual

26   punishment under the California and United States Constitutions; (6) Petitioner received ineffective

27   assistance of both trial and appellate counsel in regard to sufficient proof of his prior convictions; (7)

28

3

Petitioner received ineffective assistance of counsel because his trial counsel failed to investigate; and (8) The trial court's imposition of a twenty-five-years-to-life sentence breached Petitioner's 1991 plea bargain which guaranteed him only a one-to-five year enhancement for any future criminality.

Alternatively, the Respondent argues that (1) the Petitioner is not entitled to federal habeas corpus relief on any of these grounds, because the state court's rejection on the merits was neither contrary to, nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court; (2) that claims three and four fail to present a federal question; (3) the Petitioner cannot demonstrate ineffective assistance of counsel or prejudice; (4) there is no merit to Petitioner's claim that the 25 year to life sentence violated Petitioner's 1991 plea agreement; and (5) Petitioner is not entitled to an evidentiary hearing to resolve his claims.

### A. Petitioner's Claims 1, 2 and 5

In claims 1, 2 and 5, the Petitioner claims that the trial court erred by not requiring the prosecutor to justify dismissing the single African-American from the jury; that the prosecutor's misconduct during closing argument constitutes reversible error and that the imposition of twenty-five years to life in prison where the only criminal act was an un-aggravated burglary constitutes cruel and unusual punishment under the California and United States Constitutions.  The Respondent argues that the Petitioner is not entitled to federal habeas corpus relief on any of these grounds, because the state court's rejection on the merits was neither contrary to, nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

### 1. Petitioner's Claim That The Trial Court Erred By Not Requiring the Prosecution to Justify Use of a Peremptory Challenge to Excuse the Sole African-American From the Jury Pool

Petitioner contends the trial court erred by not requiring the prosecutor to justify his peremptory challenge of an African-American potential juror.  The Respondent contends that the California Court of Appeal properly resolved this issue based on Supreme Court precedent and a reasonable application to the facts to the case, and therefore, the California Court of Appeal decision is entitled to deference.

### a. Trial Court Ruling

During the voir dire proceedings, potential juror Alma Davis, an African-American, stated that she knew appellant, who was also African-American. (Lodgment 7, 1 RT 82-83.) Ms. Davis stated that

she had known appellant and his family since 1965.[1] (Lodgment 7, 1 RT 83, 138.)  Ms. Davis was

excused as the prosecutor's first peremptory challenge. (Lodgment 7, 1 RT 149.) At the end of the voir

dire process, defense counsel noted that out of 130 potential jurors, only one was African-American.

(Lodgment 7, 1 RT 183-184.) Defense counsel then stated: "Well, I was a little disappointed that Mr.

Baker (prosecutor) exercised his peremptory, which he's absolutely entitled to, to dismiss the only

African-American on the case. I don't know if it's in the record, but Mr. Moore is an African American,

the defendant in this particular case. That's it. Submit it." (Lodgment 7, 1 RT 184.) When asked by the

court if he was making any type of motion, defense counsel cited Wheeler and asked for a new jury

panel in order to get a more representative sample of African Americans. The court rejected the defense

motion finding Ms. Davis's long-term relationship with appellant and his family justified a peremptory

challenge from either the prosecution or the defense.[2]

### b.    Court of Appeals Decision

Before ruling on this issue, the court of appeal ordered supplemental briefing on the application

of *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317 (2005), and *Johnson v. California*, 545 U.S. 162,

---

[1] Ms. Davis made a point of saying she did not say she would not have a problem sitting on the jury. (Lodgment 7, 1 RT 138.)  "I said I would do my best to be both impartial and give him a fair trial on both sides for me." (Lodgment 7, 1 RT 138.) Ms. Davis said her brothers were friends with appellant and that she went to school with appellant's sister. She also said her mother knew appellant's mother. (Lodgment 7, 1 RT 139.) Ms. Davis stated her family and appellant's family had been friends for thirty-eight years. (Lodgment 7, 1 RT 140.) During that time, appellant had visited Ms. Davis's house on a frequent basis to play with her brother and she had visited his sister in appellant's house. (Lodgment 7, 1 RT 140.)

[2] Specifically, the court stated:

> . . . the court notes that Ms. Davis expressed a long-term relationship with the family of the defendant. And I was really not sure who was going to dismiss Ms. Davis, because that's a two-edged sword. We're aware, though the jury is not, that Mr. Moore has suffered prior convictions. That he has in fact been in prison. And it could possibly be that a longtime family friend would be aware of that. And one would run the risk of that information being revealed to the jury, even in a bifurcated proceeding such as this.

> So it appeared to me that the prosecutor was amply justified in assuming a strong bias on the part of Ms. Davis, having been a family friend for so long since they were children together. She described a relationship based on friendship of long standing. And Ms. Davis upon questioning said that, yes, you do that because you like each other. You do that because you're friends. And so it's a friendship. And that would be in this court's view a neutral basis for an excusal.  (Lodgment 7, 1 RT 185-86.)

07cv141

1    125 S. Ct. 2410 (2005) to this case. Thereafter, with multiple citations to these cases, the court of appeal

2    ruled that Petitioner had only established one element of a prima facie case of the unconstitutional use of

3    peremptory challenges by the prosecutor.  The Petitioner had established that he was an African-

4    American, a member of a cognizable racial group and the prosecutor exercised a peremptory challenge

5    to remove a member of Petitioner's race from the jury venire. However, the court of appeal balanced the

6    prosecutor's challenge to this juror against the fact that this juror was the only African-American on a

7    panel of 130-plus potential jurors and she was a long-time family friend of Petitioner. (Lodgment 17.)

8    The court of appeal noted that the circumstances in Petitioner's case were much different from those in

9    *Johnson* or *Miller-El* where prosecutors employed multiple peremptory challenges against multiple

10   members of the defendant's own race within a panel.  (Lodgment 17.) The Court examined the entire

11   record of voir dire for evidence to support the trial court's ruling and concluded that under the

12   circumstances of the case, the single exercise of a peremptory challenge by the prosecutor did not raise

13   an inference of purposeful discrimination.

14                    *c.*        *United States Supreme Court Precedent*

15          The United State Supreme Court has held that racial discrimination by the State in jury selection

16   violates the Equal Protection Clause.[3]  The Ninth Circuit summarized the controlling federal law

17   regarding claims of racially discriminatory use of peremptory challenges under the Supreme Court's

18   decision in *Batson*.  *Fernandez v. Roe*, 286 F.3d 1073, 1077 (9th Cir. 2002) (citing *Batson*, 476 U.S. at

19   96-98) (internal citations omitted).  Under *Batson*, a defendant/Petitioner must first establish a *prima*

20   *facie* case by showing that (1) the defendant/Petitioner is a member of a cognizable group; (2) the

21   prosecution has removed members of such a group; and (3) circumstances raise an "inference" that the

22   challenges were motivated by race.  *Id.*  The burden then shifts to the prosecutor/Respondent to

23   articulate a race-neutral basis for the peremptory challenges.  Finally, the trial court must determine, in

24   light of the *prima facie* case and the prosecutor's explanation, whether the defendant/Petitioner has

25   proven purposeful discrimination.  *Id.*

26

27          [3]  *See Miller-El v. Dretke*, 545 U.S. 231, 238 (2005); *Miller-El v. Cockrell*, 537 U.S. 322 (2003);
28   *Georgia v. McCollum*, 505 U.S. 42, 44 (1992); *Powers v. Ohio*, 499 U.S. 400, 404 (1991);  *Batson v.*
     *Kentucky*, 476 U.S. 79, 84 (1986);  *Swain v. Alabama*, 380 U.S. 202, 223-224 (1965); *Norris v.*
     *Alabama*, 294 U.S. 587, 596 (1935); *Strauder v. West Virginia*, 100 U.S. 303, 308-310 (1880).

07cv141

1    The Petitioner may obtain relief only by showing the conclusions reached by the California

2  courts were "an unreasonable determination of the facts in light of the evidence presented in the State

3  court proceeding[s]." 28 U.S.C. § 2254(d)(2). Thus we presume the trial court's factual findings to be

4  sound unless Petitioner rebuts the "presumption of correctness by clear and convincing evidence." §

5  2254(e)(1). The standard is demanding but not insatiable as "deference does not by definition preclude

6  relief." *Miller-El v. Cockrell*, 537 U.S. at 340.

7    Upon review of the court of appeal's decision on this issue, this Court finds that it was consistent

8  with clearly established Federal law, as determined by the Supreme Court of the United States and was

9  based on a reasonable determination of the state court evidence, because the record shows that the

10  prosecutor's challenge of Alma Davis as a potential juror was not based on group bias, but rather on her

11  personal relationship with appellant and his family. While the Petitioner has adequately established that

12  he is a member of a cognizable group and the prosecutor did remove a member of this group, the Court

13  finds that in light of all the circumstances, that the prosecutor's use of one of his peremptory challenges

14  to remove the sole African- American juror on the potential jury panel by itself does not raise an

15  inference that the challenge was used on account of Ms. Davis' race.  As such, the Court recommends

16  that habeas corpus relief on claim one of the Petition be DENIED.

17    **2.    *Petitioner's Claim That the Prosecutor's Misconduct During
           Closing Argument Constitutes Reversible Error***

18

19    The Petitioner contends that the prosecutor engaged in misconduct during closing arguments by

20  vouching for the truthfulness of a police witness, displaying numerous unduly prejudicial and

21  inflammatory photographs to the jury, attacking the honesty and integrity of Petitioner's trial

22  attorney, and making improper arguments. (Pet. at 5.) Alternatively, the Respondent argues that the

23  California Court of Appeal found that Petitioner was not prejudiced by the alleged prosecutorial

24  misconduct and because the Court of Appeal decision was not contrary to, nor did it involve an

25  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

26  United States, nor was based on an unreasonable determination of the state court evidence (28 U.S.C. §

27  2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this claim be

28  DENIED.

1          ***a.          The Prosecutor Vouching for the Veracity of a Witness***

2          The Petitioner argues that the prosecutor vouched for the credibility of the police officer

3  witnesses with regard to the defense implication that they had planted the victim's heart-shaped

4  penny on the Petitioner. The prosecutor argued that the jury's first task was to decide "whether

5  to believe these officers, who I thought got up and presented professional, honest testimony, are

6  lying." (Lodgment 5, 4 RT 337.) The defense objected that the prosecutor's remark was "improper

7  comment." (Lodgment 5, 4 RT 337.) The court overruled the objection stating that the way the

8  comment was phrased was not improper. (Lodgment 5, 4 RT 337.)

9          The Court of Appeals held that even if the prosecutor's remark was an improper personal

10  opinion about the witnesses' veracity, the Petitioner did not show that he was prejudiced by it. The

11  Court of Appeals concluded, that given the ample evidence supporting Petitioner's burglary conviction,

12  it was extremely unlikely that a more favorable verdict would have resulted in the absence of the

13  erroneous remark. (Lodgment 17, pp. 10-12.)  Although a prosecutor is prohibited from offering a

14  personal opinion on the veracity of a witness,[4] reversal of the judgment is inappropriate where there is

15  overwhelming evidence of the defendant's guilt.  *See United States v. Kennedy*, 714 F.2d 968, 976 (9th

16  Cir.1983). Where the improper opinion regarding the veracity of a witness does not affect the verdict, it

17  is harmless. *See United States v. Pruitt*, 719 F.2d 975, 978 (9th Cir. 1983). The Court of Appeal's ruling

18  was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as

19  determined by the Supreme Court of the United States, nor was based on an unreasonable determination

20  of the state court evidence (28 U.S.C. § 2254(d)).  As such, the Court recommends that habeas corpus

21  relief with regard to this claim be DENIED.

22          ***b.          The Prosecutor's Comments Regarding the Burden of Proof***

23          During his closing argument, the prosecutor made the following comment about the

24  concept of reasonable doubt:

25              Reasonable doubt is a very hard concept to understand. And I would
           submit to you that reasonable doubt is simply at the end of this case at the
26              end of the argument, if you believe the defendant is guilty, if you believe
           that, and you're convinced of it, then you can convict him, because you

27

28

_____

    [4]  *See United States v. Daas*, 198 F.3d 1167, 1178 (9th Cir.1999).

don't have a reasonable doubt. You may have some doubts, but it they're based on reasonable facts or reasonable interpretations, you can disregard them and you can convict the defendant. It's a simple right way to understand how to apply reasonable doubt. (Lodgment 5, RT 329-30.)

Later, the prosecutor argued:

If you find Mr. Moore's story is unreasonable, you reject it. If you find what he told you on the stand doesn't make sense, or you felt he was lying to you, or you felt his testimony doesn't square to the facts, you can reject it. Of course, if you reject it, they have no case. And you can convict him. (Lodgment 5, 4 RT 341-42.)

The Petitioner, nor his trial counsel made any objection to these comments. (Lodgment 5, 4 RT 330.) The Court found the Petitioner's failure to timely object to these allegedly improper arguments on misconduct grounds fatal. (Lodgment 17, p. 14.) A claim of prosecutorial misconduct is generally reviewable on appeal only if the defense makes a timely objection at trial and asks the trial court to admonish the jury to disregard the prosecutor's question or statement. Otherwise, the point is reviewable only if an admonition would not have cured the harm.[5] The Court of Appeal concluded that even if the Petitioner had preserved his appellate claims of prosecutorial misconduct as to these statements, they lacked merit. In the context of the prosecutor's entire closing argument, they were not improper and, even if they were in some manner, the Petitioner did not suffer prejudice because the jury was properly instructed pursuant to CALJIC No. 2.90 on the standard of proof beyond a reasonable doubt, and the jury was presumed to have followed the court's instructions. (Lodgment 17, p. 14-15.)

The Court finds that this claim by the Petitioner of prosecutorial misconduct was procedurally defaulted under California law, for failure to object. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (A reviewing court may not review procedurally defaulted claims.) As such, this Court finds the Court of Appeal's rejection of this claim on the merits was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor was based on an unreasonable determination of the state court evidence (28 U.S.C. § 2254(d)). As such, the Court recommends that habeas corpus relief with regard to this claim be DENIED.

---

[5] *People v. Sapp*, 31 Cal.4th 240, 279 (2003); *see also People v.Gray*, 39 Cal.4th 168, 215 (2005); *People v. Seaton*, 26 Cal.4th 598, 635 (2001); *People v. Clair*, 2 Cal.4th 629, 664 (1992).

1

### c.    *The Prosecutor's Comments Regarding Facts Not in Evidence*

2    In the closing arguments, the prosecutor argued that Petitioner's version of events did not make

3    sense, specifically his story about the Elk's Club barbecue as to why he was in the area where he was

4    apprehended. The prosecutor made the point that with all the police activity in responding to a hot

5    burglary call, with sirens and radios blaring, officers yelling, and lots of excitement, no one came over

6    from the large family barbeque to which appellant testified he was heading. (Lodgement 5, 4 RT 345.)

7    The defense objected that these were facts not in evidence, but the court overruled the objection noting,

8    "The prosecutor asked the question in that way. And Mr. Moore confirmed it in his response."[6]

9    (Lodgment 5, 4 RT 346.)

10    During the defense's closing argument, Petitioner's defense attorney, Carlos Acuna, attacked

11    the People's case by arguing that when Officer Seaman emptied appellant's pockets, he must not

12    have noticed the heart shaped penny, because it did not appear on the police inventory sheet: "Were

13    [where] is that in the inventory sheet? Where is that even inventoried? It was never there."

14    (Lodgment 5, 4 RT 357.) At this point, the prosecutor, Imperial County Deputy District Attorney

15    Eric Baker, objected. (Lodgment 5, 4 RT 357.) Mr. Acuna persisted: "It was never there."

16    (Lodgment 5, 4 RT 357.) Prosecutor Baker then said, "He's referring to evidence outside the record.

17    The inventory sheet was referenced, but never inserted in the record. And it is in the inventory

18    sheet." (Lodgment 5, 4 RT 357.) The court sustained the prosecutor's objection.

19    The Court of Appeals ruled that the prosecutor's comments about the circumstances of the Elks

20    Club barbecue were a matter of fair comment on the evidence, including reasonable inferences or

21

---

22    [6] The trial court overruled the defense objection because the prosecutor had asked that question and the information was confirmed by appellant in his response.

Q. So what did you see when you looked over there?

23    A. I seen people over there barbecuing.

Q. Okay. Fair enough. Now, you're over there – these people are over there

24    barbecuing. It's all kind of festivities. And suddenly, I assume, at some point, at 7:22, there are sirens blaring, police cars showing up, radios blaring. "'Stop, show

25    me your hands.' Lots of excitement, correct?"

A. Yeah.

26    Q. Nobody from across the street walks over to see what's going on?

A. I don't even – you're asking me a question that I can't answer.

27    Q. Well, you were there. Did you see anybody?

A. I was – I was there running. I wasn't – I mean, I'm in the back. How can I see if

28    somebody's coming across the street?

(Lodgment 4, 3 RT 294-95.)

1   deductions that may be drawn from that evidence and had factual support in the record. (Lodgment 17,

2   p. 16.) With regard to Petitioner's claim regarding the inventory sheet, the Court of Appeals noted that it

3   was Petitioner's counsel, not the prosecutor, who made the comment and, therefore, Petitioner's claim

4   had to fail because it lacked support in the record. (Lodgment 17, p. 16.) Based upon the foregoing, this

5   Court finds the Court of Appeal's rejection of these arguments was not contrary to, nor did it involve an

6   unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

7   United States, nor was based on an unreasonable determination of the state court evidence (28 U.S.C. §

8   2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this claim be

9   DENIED.

10                      **d.      *The Prosecutor's Comments Appealing to the Passions of the Jury*

11          Petitioner's attorney also objected to the following statement made by the prosecutor:

12          I want you to keep in mind something else as you're evaluating the
            evidence in this case. I want you to keep in mind who are the victims in
13          this case and who is not. The victim in this case is not Mr. Moore. The
            victim in this case is Ms. Marquez. Gabriella Marquez. And I would
14          submit to you it's also Ms. Porcayo, who, as you could tell from her 911
            tape, was very involved in this case, and it had an impact on her.
15          (Lodgment 5, 4 RT 330.)

16          The Petitioner's counsel objected to this comment saying it was improper, but failed to specify

17   misconduct and did not ask for a curative admonition. The court overruled the objection.  The

18   prosecutor also made comments about Petitioner's prior felony convictions and the defense did not

19   object. (Lodgment 5, RT 342, 348.)  Because Petitioner's counsel failed to state the grounds for his

20   objection for the first instance and failed to object at all for the second instance, the Court of Appeal that

21   Petitioner's claim of error was waived.  (Lodgment 17, p. 17-18.)  These claims of prosecutorial

22   misconduct were procedurally defaulted under California law, for failure to properly object As such, this

23   Court finds the Court of Appeal's rejection of this claim on the merits was not contrary to, nor did it

24   involve an unreasonable application of, clearly established Federal law, as determined by the Supreme

25   Court of the United States, nor was based on an unreasonable determination of the state court evidence

26   (28 U.S.C. § 2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this

27   claim be DENIED.

28   ///

1          e.      **Petitioner's Claims of Cumulative Error for Prosecutorial Misconduct**

2          The Petitioner argued in the California Court of Appeals that the cumulative effect of the

3    prosecutor's numerous acts of misconduct was prejudicial and deprived him of a fair trial.  However, the

4    Court of Appeals stated that under the doctrine of cumulative error, in determining whether reversal of

5    the judgment is required, the court must look at whether the Petitioner received due process and a fair

6    trial.  The Court of Appeal stated,

7              "We identified only one matter that was even arguably error, namely, the
               prosecutor's reference to his belief about the police officers' credibility,
8              and as to that matter the claimed error was harmless. That, and
               overwhelming evidence of Moore's guilt, which he does not challenge,
9              easily permits us to conclude there was no cumulative error in this case."
               (Lodgment 17, p. 19.)
10

11         The Court of Appeal's concluded that there was no prosecutorial misconduct, but that even

12   if there were, any error was harmless in light of the overwhelming evidence of Petitioner's guilt,

13   each of these prosecutorial misconduct and evidentiary errors individually were harmless,[7] and their

14   cumulative effect did not deprive Petitioner of a fair trial.[8]  The Court agrees.  The Court of Appeal's

15   findings were not contrary to, nor did they involve an unreasonable application of, clearly established

16   Federal law, as determined by the Supreme Court of the United States, nor were they based on an

17   unreasonable determination of the state court evidence (28 U.S.C. § 2254(d)).  As such, the Court

18   recommends that habeas corpus relief with regard to these claims be DENIED.

19          3.      **Petitioner's Claim That the Twenty-five Years to Life Sentence for Un-**
                    **aggravated Burglary Constitutes Cruel and Unusual Punishment under the**
20                  **California and United States Constitutions**

21         The Petitioner contends in ground five that the imposition of twenty-five years to life in prison

22   where the only criminal act was an un-aggravated burglary constitutes cruel and unusual punishment

23   under the California and United States Constitutions.  Respondent argues that this claim must fail in

24

25

26

27         [7] *See United States v. Daychild*, 357 F.3d 1082, 1099 (9th Cir. 2004); *United States v.*
     *Arambula-Ruiz*, 987 F.2d 599, 605 (9th Cir. 1993).
28

           [8] *See United States v. Payne*, 944 F.2d 1458, 1477 (9th Cir.1991).

light of the United States Supreme Court's decisions in *Lockyer v. Andrade*,[9] and *Ewing v. California*,[10] and  the California Court of Appeal's rejection of Petitioner's claim, which complied with 28 U.S.C. § 2254(d).  Respondent argues that in Ewing, the defendant was convicted of grand theft, a "wobbler" offense under California law, and was sentenced to twenty-five years to life under the Three Strikes Law.  His prior "strikes" included three burglaries and a robbery. *Ewing*, at 18-19. A five-justice majority concluded the sentence did not violate the Eighth Amendment's a "narrow proportionality principle" applicable to non-capital cases, which prohibits only extreme sentences that are grossly disproportionate to the crime. *Ewing*, at 30-31.  Respondent argues that in applying that principle to a recidivist sentencing scheme, both the current offense and the defendant's prior criminal record must be considered.  Respondent contends that deterring and incapacitating recidivist felons, regardless of the gravity of the new felony, is a legitimate basis for enhanced punishment and that state legislatures are entitled to deference in crafting punishments. *Id.* at 29-30.

The Respondent also cites to *Andrade*, where the petitioner was convicted of two counts of petty theft with a prior and was sentenced to two consecutive terms of twenty-five years to life, in effect fifty-five years to life, under California's Three Strikes Law.  *Lockyer v. Andrade*,  538 U.S. 63, 67-69 (2003).  The Supreme Court held that the state appellate court's rejection of an Eighth Amendment challenge to his sentence did not contradict or unreasonably apply clearly established federal law as determined by the Supreme Court, within the meaning of 28 U.S.C. § 2254(d). *Id.* at 72-73.  The Supreme Court noted that its prior decisions[11] left the precise contours of Eighth Amendment proportionality unclear, and that the state court's ruling was not contrary to or an unreasonable application of those decisions. *Id.* at 75-76.

In the instant case, taking into account the fact that the Petitioner was forty-one years old at the time of the crime, was abusing drugs and his criminal record demonstrated a history of repeatedly committing residential burglaries, the California Court of Appeal found that Petitioner's sentence did

---

[9] 538 U.S. 63 (2003).

[10] 538 U.S. 11 (2003).

[11] *Rummel v. Estelle*, 445 U.S. 263, 271-72, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), *Solem v. Helm*, 463 U.S. 277, 303, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991).

1  not constitute cruel and unusual punishment under either the California Constitution or the Eighth

2  Amendment of the U.S. Constitution.  This Court agrees.  The Court of Appeal's findings were not

3  contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as

4  determined by the Supreme Court of the United States, nor were they based on an unreasonable

5  determination of the state court evidence (28 U.S.C. § 2254(d)).  As such, the Court recommends that

6  habeas corpus relief with regard to this claim be DENIED.

7       **B.**    **Petitioner's Claims 3 and 4**

8       The Petitioner argues in claim three that because he was not allowed to exercise his right to

9  allocution, he must be re-sentenced and in claim four, the Petitioner contends that the trial court abused

10  its discretion in failing to dismiss strike priors.  Respondents argue that claims three and four fail to

11  present a federal question.

12       **1.**    **Petitioner's Claim that He Must Be Re-sentenced Because He
13  Was Not Permitted to Exercise His Right Of Allocution**

14       The Petitioner argues that the denial of his right of allocution was not harmless and his case

15  should be remanded for re-sentencing, because if he had been allowed to speak, he argues that there was

16  a reasonable possibility of a more favorable sentencing outcome.  (Pet. at 35-38.)  At the Petitioner's

17  sentencing, the trial court only communicated with his counsel and the prosecutor and did not ask

18  Petitioner if he had anything to say.  The Petitioner did not request to say anything at the sentencing

19  hearing.

20       The Supreme Court has recognized the importance of the right of allocution in *Green v. United

21  States*,[12] however, the Court concluded in *Hill v. United States*,[13] that a sentencing judge's failure to ask

22  a defendant if he had anything to say, although a violation of Rule 32(a)(1)(C) of the Federal Rules of

23  Criminal Procedure, was not an error of Constitutional dimension and could not support a writ of habeas

24  corpus.  The right to speak on one's behalf at sentencing was given Constitutional status by the Ninth

25

26

27  _____

28      [12] 365 U.S. 301, 304 (1961).

    [13] 368 U.S. 424 (1962).

1    Circuit in *Boardman v. Estelle*,[14] but only where a defendant requests an opportunity to speak to the

2    court, but such request is denied. The Ninth Circuit applied the harmless error analysis and found that

3    the denial of the right of allocution to be an error in the conduct of the trial, not a structural defect in the

4    trial process, and as such one that may be treated as harmless. *Id.* at 1530.

5           While the California Supreme Court is currently considering whether there is a denial of due

6    process if the trial court refuses an affirmative request by a defendant to speak at sentencing,[15] where

7    there is no such affirmative request, as is the case here, the right of allocution is further called into

8    question, especially where the defendant is represented by counsel who is charged with addressing the

9    Court on the defendant's behalf.  *See People v. Cross*, 213 Cal. App. 2d 678, 682 (1963).  Because the

10   Petitioner did not ask for, and the trial court did not refuse him an opportunity to address the court at

11   sentencing, the Respondent contends that Petitioner's claim is based solely on California law and

12   therefore fails to present a federal question.  The Court agrees.  The Court of Appeal's findings were not

13   contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as

14   determined by the Supreme Court of the United States, nor were they based on an unreasonable

15   determination of the state court evidence (28 U.S.C. § 2254(d)).

16          In conducting habeas review, a federal court is limited to deciding whether a conviction violated

17   the Constitution, laws or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see*

18   28 U.S.C. § 2254(a).  Habeas relief is not available for an alleged error in the interpretation or

19   application of state law.  *Estelle v. McGuire*, 502 U.S. at 67-68; *Jammal v. Van de Kamp*, 926 F.2d 918,

20   919 (9th Cir. 1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989)("the availability of a claim

21   under state law does not of itself establish that a claim was available under the United States

22   Constitution"). A federal district court does "not sit as a 'super' state supreme court" with general super-

23   visory authority over the proper application of state law.  *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir.

24   1986); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(federal habeas court must respect state court's

25   application of its law); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990)(federal court has no authority

26

27          [14] 957 F.2d 1523, 1530 (9th Cir. 1992).

28          [15] *People v. Evans*, 135 Cal. App. 4th 1178, 37 Cal. Rptr. 3d 852 (2006), *review granted* April 26, 2006, S141357.

1 to review state's application of state law).  Instead, federal courts may only intervene in state judicial

2 proceedings to correct errors of federal constitutional magnitude.  *Oxborrow v. Eikenberry*, 877 F.2d

3 1395, 1400 (9th Cir. 1989)(stating that federal courts are not concerned with errors of state law unless

4 they rise to level of constitutional violation). A federal habeas corpus petition must allege a deprivation

5 of one or more federal rights to present a cognizable claim pursuant to § 2254.  As such, the Court finds

6 that ground three of the Petition fails to present a federal question and, therefore, recommends that

7 habeas corpus relief with regard to this claim be DENIED.

8                 **2.**        **Petitioner's Claim That the Trial Court Abused its Discretion**

9                         **in Failing to Dismiss Strike Priors**

10        The Petitioner contends the trial court abused its discretion in balancing the relevant factors

11 in determining whether the Petitioner's strike priors should have been dismissed under California Penal

12 Code section 1385(a). The Respondent argues that because this issue is based solely on California law,

13 ground four of the Petition fails to present a federal question for this Court to review.  The Court agrees.

14 As set forth above, when conducting habeas review, a federal court is limited to deciding whether a

15 conviction violated the Constitution, laws or treaties of the United States and  habeas relief is not

16 available for an alleged error in the interpretation or application of state law.[16]  As such, the Court finds

17 that ground four of the Petition fails to present a federal question and, therefore, recommends that

18 habeas corpus relief with regard to this claim be DENIED.

19     **C.**        **Petitioner's Claims 6 and 7**

20        The Petitioner makes two claims of ineffective assistance of counsel, one for his defense counsel

21 because he did not challenge the sufficiency of "the [California Penal Code section] 969(b)" package

22 which was used to prove up his prior convictions, and one for his appellate attorney who did not raise

23 the insufficiency claim or assert the incompetence of Petitioner's trial counsel for failing to raise the

24 sufficiency claim.  The Respondent argues that the Petitioner has not shown that he had incompetent

25 counsel or that he was prejudiced by ineffective assistance of counsel.

26

27         [16] *Estelle v. McGuire*, 502 U.S. at 67-68; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.

28 1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989)("the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution").

1    In order to prevail on his claim of ineffective assistance of trial counsel, Petitioner must

2    "overcome a strong presumption that counsel 'rendered adequate assistance and made all significant

3    decisions in the exercise of reasonable professional judgment,' and establish that [counsel's]

4    performance was 'outside the wide range of professionally competent assistance'." *Clabourne v. Lewis*,

5    64 F.3d 1373, 1377 (9th Cir. 1995) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).  Even

6    if Petitioner establishes that the legal assistance he received at trial was inadequate, Petitioner must go

7    further and demonstrate prejudice as a result of the actions of counsel.  In this context, prejudice means

8    that Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors,

9    the result of the proceeding would have been different.  A reasonable probability is a probability

10   sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  As such, the Supreme

11   Court requires that the Petitioner establish both objectively unreasonable deficient performance and also

12   prejudice.[17]

13       In evaluating a claim that counsel's performance was deficient, a federal habeas court "must

14   indulge a strong presumption that counsel's conduct falls within the wide range of reasonable profes-

15   sional assistance . . . ." *Id*. at 689.  Even if counsel's conduct is found to be deficient, "[t]he defendant

16   must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

17   of the proceeding would have been different.  A reasonable probability is a probability sufficient to

18   undermine confidence in the outcome." *Id*. at 694.  The court need not address both the deficiency and

19   prejudice prongs if the defendant fails to make a sufficient showing on either one. *Id*. at 697.

20       This Court concludes that the record does not contain a factual basis to sustain either of

21   Respondent's burdens to demonstrate deficient performance or prejudice.  Given the overwhelming

22   evidence,[18] it is difficult to imagine what possible exculpatory evidence Petitioner's counsel could have

23   obtained from the investigation Petitioner claims should have been conducted.  The Court is similarly

24   unmoved by Petitioner's claims of ineffective assistance of counsel on behalf of both trial and appellate

26       [17] *Bell v. Cone*, 535 U.S. 685 (2002); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

27       [18] Petitioner was seen attempting to break into the victim's apartment and police responding to
the call confronted the Petitioner inside the apartment and Petitioner ran past them and led them on a
28   foot chase, which ended in his capture and arrest.  Officers later found a distinctive coin in Petitioner's
front pocket, which the victim identified as her property. (Lodgement 17).

1   counsel for failing to require sufficient proof of his prior convictions, since the Petitioner had a long

2   history of prior convictions for residential burglaries.[19]  After the jury found the Petitioner guilty, the

3   trial court relied upon Petitioner's prior prison records and found the allegation that Petitioner had

4   suffered prior convictions to be true.  Petitioner's counsel had no objection. (Lodgment 5, 4 RT 400.)

5          The trial court followed the procedure set forth in Penal Code section 969b in determining the

6   truth of the allegations concerning prior convictions. Section 969b provides that "records or copies of

7   records of any state penitentiary, reformatory, county jail or city jail, or federal penitentiary in which

8   [defendant] has been imprisoned" may be used to establish prima facie evidence of prior convictions,

9   provided "such records or copies thereof have been certified by the official custodian of such records . ."

10   The statute thus creates an exception to the hearsay rule. Evidence other than the record of conviction

11   may not be utilized to prove that a defendant's prior conviction met the definition of a "serious felony"

12   within the scope of the "three strikes" law. *People v. Scott*, 102 Cal. Rptr. 2d 622, 85 Cal. App. 4th 905

13   (2000).

14          Under California law, this prison package is the usual way a defendant's prior criminal history is

15   be proved in terms of the three strikes law and any objection to it or to its sufficiency in proving up that

16   criminal history would likely have failed. As such, Petitioner's trial and appellate counsel were not in

17   competent for failing to object to the sufficiency of these records to prove the prior convictions.

18   Petitioner raised this issue in his petition for writ of habeas corpus to the California Supreme Court.

19   (Lodgment 19.). That petition was denied by the California Supreme Court without comment.

20   (Lodgment 21.)

21          The Respondent argues that the Petitioner cannot demonstrate ineffective assistance of counsel

22   or prejudice and the Court agrees.  As such, the Court finds that grounds six and seven of the Petition

23   fail to demonstrate ineffective assistance of counsel or prejudice and, therefore, recommends that habeas

24   corpus relief with regard to this claim be DENIED.

25   ///

26   ─────────────────

27          [19] Petitioner's criminal is as follows: 1980 conviction for grand theft; 1983 conviction for second
     degree burglary; 1984 conviction for first degree burglary; numerous violations of probation and parole;
     1991 conviction for first degree burglary; 1993 conviction for second degree burglary; 1996 conviction
28   for second degree burglary; 1999 conviction for first degree burglary; and 2003 conviction for first
     degree burglary.

### D.      Petitioner's Claim 8

The Petitioner claims in ground eight of the Petition that the trial court's imposition of a twenty-five-years-to-life sentence breached his 1991 plea bargain which guaranteed him only a one-to-five year enhancement for any future criminality. The Supreme Court has held that a criminal defendant may obtain relief where the state breaches a plea agreement.  *Santobello v. New York*, 404 U.S. 257 (1971).  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262.

To the extent that the Petitioner contends that his right to due process was violated because the government breached the plea agreement in his 1991 conviction, this contention lacks merit. The Court's review of reporter's transcript of the felony change of plea enter against the Petitioner on April 22, 1991, reveals on page 4, lines 17 through 25:

> The Court: Other than what we've discussed about dismissing these other
>         serious felony allegations which could add, each of them, five
>         more years to the sentence, other than dismissing those, other than
>         telling your attorney that I would hold a CRC or 3051 hearing,
>         other than that have there been any other promises that have been
>         made to you that haven't been mentioned right here in open court
>         in order to get you to change your plea?
> The Defendant: No, there haven't.

Later on in the change of plea, the Court informs the Petitioner that his 1991 conviction could have the effect of adding an additional five years to any later serious felony that he might commit and the Petitioner acknowledged that he understood.  *See* Reporter's Transcript of the Felony Change of Plea for the 1991 Conviction, at 7, lines 17-24.  As such, in Petitioner's 1991 plea, the parties never agreed that Petitioner's conviction would not be charged as a serious felony, and further, the plea agreement did not limit the resulting collateral effects of the conviction.  Applying a presumption of correctness to the California courts' findings of fact, we cannot say that this determination was contrary to, or an unreasonable application of established federal law. See § 2254(e); *United States v. Serrano*, 938 F.2d 1058, 1061 (9th Cir.1991) (stating that in determining whether a plea agreement has been broken, courts look to what was reasonably understood by the defendant when he entered his plea of guilty).

1   To the extent this claim rests on a violation of California law, it is not cognizable in these

2   proceedings. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed.2d 606 (1990)

3   "[F]ederal habeas corpus relief does not lie for errors of state law."). For these reasons, the California

4   courts' rejection of these claims was neither contrary to nor an unreasonable application of clearly

5   established federal law, as determined by the Supreme Court of the United States, nor was it based on an

6   unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Hill, 472 U.S. at 455, 105 S. Ct. 2768;

7   Sass, 461 F.3d at 1129.

8   ### III.   *Petitioner's Request For An Evidentiary Hearing*

9   Petitioner has requested an evidentiary hearing in this case, however, an evidentiary hearing is

10  not grantable as a matter of course, is only allowable when certain requisite facts appear which render it,

11  in the Court's discretion, necessary to adduce additional evidence or factual circumstances for the

12  granting of a writ of habeas corpus.  The initial question presented to a district judge is whether the

13  petition alleges a deprivation of constitutional rights which would entitle the petitioner to be released

14  from state custody. This determination must be made upon the papers presented to the trial judge. If

15  such allegations have been made, and if a dispute as to the facts appears either on the face of the petition

16  and supporting papers or from the facts alleged in the return, only then must the district judge determine

17  whether a hearing is necessary to resolve the dispute. *Cf. Townsend v. Sain*, 372 U.S. 293, 309 (1963);

18  *U.S. ex rel. Ross v. McMann*, 409 F.2d 1016, 1037-1038 (2nd Cir. 1969). The trial court's exercise of

19  discretion can only be tested in the light of the reasons disclosed at the time the motion was heard and

20  not on the basis of more elaborate representations argued on appeal. *Ungar v. Sarafite*, 376 U.S. 575,

21  589 (1964).

22  A federal court may be required to hold a hearing if, among other factors:  (1) the fact finding

23  procedure employed by the state was not adequate to afford a full and fair hearing; or (2) the petitioner

24  did not receive a full, fair and adequate hearing; or (3) the state court record was not sufficient to

25  support the state court findings.[20] When a petitioner fails to develop a material fact in a state court

26  proceeding, an evidentiary hearing will not be held on federal habeas review unless the petitioner can

27

28  [20] *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004); *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992); *see also Ford v. Wainwright*, 477 U.S. 399, 410-11 (1986)(plurality opinion); *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963); 28 U.S.C. § 2254(d)(2), (d)(6) & (d)(8).

demonstrate cause for failing to develop the fact, and prejudice resulting from that failure, or demonstrate that a fundamental miscarriage of justice would result from failure to hold a federal hearing. *Keeney v. Tamayo-Reyes*, 112 S. Ct. 1715, 1721 (1992).

Respondent argues that the Petitioner is not entitled to an evidentiary hearing for any of the allegations set forth in the Petition. Because the Petitioner does not dispute any of the facts as presented to the trial court and all of his claims are based on the appellate record and were reasonably denied on the merits by the California Supreme Court, the Court finds that an evidentiary hearing is not warranted and therefore recommends that Petitioner's request be DENIED.

### *Conclusion*

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgement be entered denying the Petition.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties ***on or before March 14, 2008***. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed ***on or before March 24, 2008***. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: February 27, 2008

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMES A. MOORE,                          )     Civil No.07cv141 IEG (AJB)
                                         )
                Petitioner,              )
                                         )
v.                                       )     Report and Recommendation
                                         )     [Doc. Nos. 1, 6, 8 and 9]
DERRICK OLLISON, Warden,                 )
                                         )
                Respondent.              )
_____)

    Petitioner, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with regard to his November 4, 2003 conviction for First Degree Burglary in Imperial County Superior Court case number CF-12021.  The Respondent has filed an answer [Doc. No. 6] and lodged the relevant portions of the state court record and the Petitioner filed a Traverse [Doc. No 8].  Respondents requested and were granted leave to file a supplemental answer [Doc. No. 9].  Petitioner was given until February 15, 2008 to file a supplemental traverse, but as of the date of this Order, the Court has received no filing or request for extension of time from the Petitioner. Upon a review of the record, for the reasons set forth herein, it is recommended that the Petition be DENIED.

### ***Procedural Background***

    A jury found petitioner guilty of first degree burglary (Cal. Penal Code §§ 459, 462(a)).  (CT. 59.)  After a subsequent court trial, it was determined that petitioner had suffered three prior strike

convictions pursuant to California Penal Code section 1170.12(a) through (d), and section 667(b) through (i). (CT 61.) The court sentenced petitioner to state prison for a term of twenty-five years to life. (CT 129.) On February 6, 2004, appellant filed a notice fo appeal from the judgment. (CT 129.)

In an opinion issued October 11, 2005, the California Court of Appeal, Fourth District, Division One, affirmed the judgment. (Lodgment 17.)

Petitioner filed a petition for review with the California Supreme Court on November 14, 2005 (Lodgment 18). Petitioner also filed a "First Amended Petition" on February 27, 2006 and a "Second Amended Petition - Grounds Four" for writ of habeas corpus on August 18, 2006 with the California Supreme Court. (Lodgment 19.) These habeas petitions were denied by the California Supreme Court on September 13, 2006. (Lodgment 21.)

## *Discussion*

**I.    *Standard of Review***

Title 28, United States Code, § 2254(a), sets forth the following scope of review:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*,

2

529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. An unreasonable application may also be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." *Williams*, 529 U.S. at 412.

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court."  28 U.S.C.A. § 2254(d)(2) (West 2006).  In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming they rest on a factual determination, are objectively unreasonable.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## II.     *Petitioner's Claims*

Petitioner asserts the following eight grounds for relief in the instant petition: (1) The trial court erred by not requiring the prosecutor to justify dismissing the single African-American from the jury; (2) The prosecutor's misconduct during closing argument constitutes reversible error; (3) Because Petitioner was not allowed to exercise his right to allocution, he must be re-sentenced; (4) The trial court abused its discretion in failing to dismiss strike priors; (5) Imposition of twenty-five years to life in prison where the only criminal act was an unaggravated burglary constitutes cruel and unusual punishment under the California and United States Constitutions; (6) Petitioner received ineffective assistance of both trial and appellate counsel in regard to sufficient proof of his prior convictions; (7)

1   Petitioner received ineffective assistance of counsel because his trial counsel failed to investigate; and

2   (8) The trial court's imposition of a twenty-five-years-to-life sentence breached Petitioner's 1991 plea

3   bargain which guaranteed him only a one-to-five year enhancement for any future criminality.

4       Alternatively, the Respondent argues that (1) the Petitioner is not entitled to federal habeas

5   corpus relief on any of these grounds, because the state court's rejection on the merits was neither

6   contrary to, nor an unreasonable application of clearly established federal law as determined by the

7   United States Supreme Court; (2) that claims three and four fail to present a federal question;  (3) the

8   Petitioner cannot demonstrate ineffective assistance of counsel or prejudice; (4) there is no merit to

9   Petitioner's claim that the 25 year to life sentence violated Petitioner's 1991 plea agreement; and (5)

10  Petitioner is not entitled to an evidentiary hearing to resolve his claims.

11      **A.    Petitioner's Claims 1, 2 and 5**

12      In claims 1, 2 and 5, the Petitioner claims that the trial court erred by not requiring the prosecu-

13  tor to justify dismissing the single African-American from the jury; that the prosecutor's misconduct

14  during closing argument constitutes reversible error and that the imposition of twenty-five years to life

15  in prison where the only criminal act was an un-aggravated burglary constitutes cruel and unusual

16  punishment under the California and United States Constitutions.  The Respondent argues that the

17  Petitioner is not entitled to federal habeas corpus relief on any of these grounds, because the state

18  court's rejection on the merits was neither contrary to, nor an unreasonable application of clearly

19  established federal law as determined by the United States Supreme Court.

20      **1.    Petitioner's Claim That The Trial Court Erred By Not Requiring the Prosecu-**
        **tion to Justify Use of a Peremptory Challenge to Excuse the Sole African-**
21      **American From the Jury Pool**

22      Petitioner contends the trial court erred by not requiring the prosecutor to justify his peremptory

23  challenge of an African-American potential juror.  The Respondent contends that the California Court of

24  Appeal properly resolved this issue based on Supreme Court precedent and a reasonable application to

25  the facts to the case, and therefore, the California Court of Appeal decision is entitled to deference.

26      **a.    Trial Court Ruling**

27      During the voir dire proceedings, potential juror Alma Davis, an African-American, stated that

28  she knew appellant, who was also African-American. (Lodgment 7, 1 RT 82-83.) Ms. Davis stated that

4

1   she had known appellant and his family since 1965.[1] (Lodgment 7, 1 RT 83, 138.)  Ms. Davis was

2   excused as the prosecutor's first peremptory challenge. (Lodgment 7, 1 RT 149.) At the end of the voir

3   dire process, defense counsel noted that out of 130 potential jurors, only one was African-American.

4   (Lodgment 7, 1 RT 183-184.) Defense counsel then stated: "Well, I was a little disappointed that Mr.

5   Baker (prosecutor) exercised his peremptory, which he's absolutely entitled to, to dismiss the only

6   African-American on the case. I don't know if it's in the record, but Mr. Moore is an African American,

7   the defendant in this particular case. That's it. Submit it." (Lodgment 7, 1 RT 184.) When asked by the

8   court if he was making any type of motion, defense counsel cited Wheeler and asked for a new jury

9   panel in order to get a more representative sample of African Americans. The court rejected the defense

10  motion finding Ms. Davis's long-term relationship with appellant and his family justified a peremptory

11  challenge from either the prosecution or the defense.[2]

12                              ***b.       Court of Appeals Decision***

13         Before ruling on this issue, the court of appeal ordered supplemental briefing on the application

14  of *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317 (2005), and *Johnson v. California*, 545 U.S. 162,

15

---

16      [1] Ms. Davis made a point of saying she did not say she would not have a problem sitting on the
    jury. (Lodgment 7, 1 RT 138.)  "I said I would do my best to be both impartial and give him a fair trial
17  on both sides for me."  (Lodgment 7, 1 RT 138.) Ms. Davis said her brothers were friends with appellant
    and that she went to school with appellant's sister. She also said her mother knew appellant's mother.
18  (Lodgment 7, 1 RT 139.) Ms. Davis stated her family and appellant's family had been friends for
    thirty-eight years. (Lodgment 7, 1 RT 140.) During that time, appellant had visited Ms. Davis's house
19  on a frequent basis to play with her brother and she had visited his sister in appellant's house.
    (Lodgment 7, 1 RT 140.)

20

21      [2] Specifically, the court stated:

22              . . . the court notes that Ms. Davis expressed a long-term relationship with the
        family of the defendant. And I was really not sure who was going to dismiss Ms. Davis,
23      because that's a two-edged sword. We're aware, though the jury is not, that Mr. Moore
        has suffered prior convictions. That he has in fact been in prison. And it could possibly
24      be that a longtime family friend would be aware of that. And one would run the risk of
        that information being revealed to the jury, even in a bifurcated proceeding such as this.

25              So it appeared to me that the prosecutor was amply justified in assuming a strong
        bias on the part of Ms. Davis, having been a family friend for so long since they were
26      children together. She described a relationship based on friendship of long standing. And
        Ms. Davis upon questioning said that, yes, you do that because you like each other. You
27      do that because you're friends. And so it's a friendship. And that would be in this court's
        view a neutral basis for an excusal.  (Lodgment 7, 1 RT 185-86.)

28

                                                                                        07cv141

125 S. Ct. 2410 (2005) to this case. Thereafter, with multiple citations to these cases, the court of appeal ruled that Petitioner had only established one element of a prima facie case of the unconstitutional use of peremptory challenges by the prosecutor.  The Petitioner had established that he was an African-American, a member of a cognizable racial group and the prosecutor exercised a peremptory challenge to remove a member of Petitioner's race from the jury venire. However, the court of appeal balanced the prosecutor's challenge to this juror against the fact that this juror was the only African-American on a panel of 130-plus potential jurors and she was a long-time family friend of Petitioner. (Lodgment 17.) The court of appeal noted that the circumstances in Petitioner's case were much different from those in *Johnson* or *Miller-El* where prosecutors employed multiple peremptory challenges against multiple members of the defendant's own race within a panel.  (Lodgment 17.) The Court examined the entire record of voir dire for evidence to support the trial court's ruling and concluded that under the circumstances of the case, the single exercise of a peremptory challenge by the prosecutor did not raise an inference of purposeful discrimination.

### c.    *United States Supreme Court Precedent*

The United State Supreme Court has held that racial discrimination by the State in jury selection violates the Equal Protection Clause.[3]  The Ninth Circuit summarized the controlling federal law regarding claims of racially discriminatory use of peremptory challenges under the Supreme Court's decision in *Batson*.  *Fernandez v. Roe*, 286 F.3d 1073, 1077 (9th Cir. 2002) (citing *Batson*, 476 U.S. at 96-98) (internal citations omitted).  Under *Batson*, a defendant/Petitioner must first establish a *prima facie* case by showing that (1) the defendant/Petitioner is a member of a cognizable group; (2) the prosecution has removed members of such a group; and (3) circumstances raise an "inference" that the challenges were motivated by race.  *Id.*  The burden then shifts to the prosecutor/Respondent to articulate a race-neutral basis for the peremptory challenges.  Finally, the trial court must determine, in light of the *prima facie* case and the prosecutor's explanation, whether the defendant/Petitioner has proven purposeful discrimination.  *Id.*

---

[3]  *See Miller-El v. Dretke*, 545 U.S. 231, 238 (2005); *Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Georgia v. McCollum*, 505 U.S. 42, 44 (1992); *Powers v. Ohio*, 499 U.S. 400, 404 (1991);  *Batson v. Kentucky*, 476 U.S. 79, 84 (1986);  *Swain v. Alabama*, 380 U.S. 202, 223-224 (1965); *Norris v. Alabama*, 294 U.S. 587, 596 (1935); *Strauder v. West Virginia*, 100 U.S. 303, 308-310 (1880).

1    The Petitioner may obtain relief only by showing the conclusions reached by the California

2    courts were "an unreasonable determination of the facts in light of the evidence presented in the State

3    court proceeding[s]." 28 U.S.C. § 2254(d)(2). Thus we presume the trial court's factual findings to be

4    sound unless Petitioner rebuts the "presumption of correctness by clear and convincing evidence." §

5    2254(e)(1). The standard is demanding but not insatiable as "deference does not by definition preclude

6    relief." *Miller-El v. Cockrell*, 537 U.S. at 340.

7    Upon review of the court of appeal's decision on this issue, this Court finds that it was consistent

8    with clearly established Federal law, as determined by the Supreme Court of the United States and was

9    based on a reasonable determination of the state court evidence, because the record shows that the

10   prosecutor's challenge of Alma Davis as a potential juror was not based on group bias, but rather on her

11   personal relationship with appellant and his family. While the Petitioner has adequately established that

12   he is a member of a cognizable group and the prosecutor did remove a member of this group, the Court

13   finds that in light of all the circumstances, that the prosecutor's use of one of his peremptory challenges

14   to remove the sole African- American juror on the potential jury panel by itself does not raise an

15   inference that the challenge was used on account of Ms. Davis' race.  As such, the Court recommends

16   that habeas corpus relief on claim one of the Petition be DENIED.

17              **2.     *Petitioner's Claim That the Prosecutor's Misconduct During***
                         ***Closing Argument Constitutes Reversible Error***
18

19   The Petitioner contends that the prosecutor engaged in misconduct during closing arguments by

20   vouching for the truthfulness of a police witness, displaying numerous unduly prejudicial and

21   inflammatory photographs to the jury, attacking the honesty and integrity of Petitioner's trial

22   attorney, and making improper arguments. (Pet. at 5.) Alternatively, the Respondent argues that the

23   California Court of Appeal found that Petitioner was not prejudiced by the alleged prosecutorial

24   misconduct and because the Court of Appeal decision was not contrary to, nor did it involve an

25   unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

26   United States, nor was based on an unreasonable determination of the state court evidence (28 U.S.C. §

27   2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this claim be

28   DENIED.

### a.      The Prosecutor Vouching for the Veracity of a Witness

The Petitioner argues that the prosecutor vouched for the credibility of the police officer witnesses with regard to the defense implication that they had planted the victim's heart-shaped penny on the Petitioner. The prosecutor argued that the jury's first task was to decide "whether to believe these officers, who I thought got up and presented professional, honest testimony, are lying." (Lodgment 5, 4 RT 337.) The defense objected that the prosecutor's remark was "improper comment." (Lodgment 5, 4 RT 337.) The court overruled the objection stating that the way the comment was phrased was not improper. (Lodgment 5, 4 RT 337.)

The Court of Appeals held that even if the prosecutor's remark was an improper personal opinion about the witnesses' veracity, the Petitioner did not show that he was prejudiced by it. The Court of Appeals concluded, that given the ample evidence supporting Petitioner's burglary conviction, it was extremely unlikely that a more favorable verdict would have resulted in the absence of the erroneous remark. (Lodgment 17, pp. 10-12.)  Although a prosecutor is prohibited from offering a personal opinion on the veracity of a witness,[4] reversal of the judgment is inappropriate where there is overwhelming evidence of the defendant's guilt. *See United States v. Kennedy*, 714 F.2d 968, 976 (9th Cir.1983). Where the improper opinion regarding the veracity of a witness does not affect the verdict, it is harmless. *See United States v. Pruitt*, 719 F.2d 975, 978 (9th Cir. 1983). The Court of Appeal's ruling was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor was based on an unreasonable determination of the state court evidence (28 U.S.C. § 2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this claim be DENIED.

### b.      The Prosecutor's Comments Regarding the Burden of Proof

During his closing argument, the prosecutor made the following comment about the concept of reasonable doubt:

> Reasonable doubt is a very hard concept to understand. And I would submit to you that reasonable doubt is simply at the end of this case at the end of the argument, if you believe the defendant is guilty, if you believe that, and you're convinced of it, then you can convict him, because you

---

[4] *See United States v. Daas*, 198 F.3d 1167, 1178 (9th Cir.1999).

don't have a reasonable doubt. You may have some doubts, but it they're based on reasonable facts or reasonable interpretations, you can disregard them and you can convict the defendant. It's a simple right way to understand how to apply reasonable doubt. (Lodgment 5, RT 329-30.)

Later, the prosecutor argued:

If you find Mr. Moore's story is unreasonable, you reject it. If you find what he told you on the stand doesn't make sense, or you felt he was lying to you, or you felt his testimony doesn't square to the facts, you can reject it. Of course, if you reject it, they have no case. And you can convict him. (Lodgment 5, 4 RT 341-42.)

The Petitioner, nor his trial counsel made any objection to these comments. (Lodgment 5, 4 RT 330.) The Court found the Petitioner's failure to timely object to these allegedly improper arguments on misconduct grounds fatal. (Lodgment 17, p. 14.) A claim of prosecutorial misconduct is generally reviewable on appeal only if the defense makes a timely objection at trial and asks the trial court to admonish the jury to disregard the prosecutor's question or statement. Otherwise, the point is reviewable only if an admonition would not have cured the harm.[5] The Court of Appeal concluded that even if the Petitioner had preserved his appellate claims of prosecutorial misconduct as to these statements, they lacked merit. In the context of the prosecutor's entire closing argument, they were not improper and, even if they were in some manner, the Petitioner did not suffer prejudice because the jury was properly instructed pursuant to CALJIC No. 2.90 on the standard of proof beyond a reasonable doubt, and the jury was presumed to have followed the court's instructions. (Lodgment 17, p. 14-15.)

The Court finds that this claim by the Petitioner of prosecutorial misconduct was procedurally defaulted under California law, for failure to object. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (A reviewing court may not review procedurally defaulted claims.) As such, this Court finds the Court of Appeal's rejection of this claim on the merits was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor was based on an unreasonable determination of the state court evidence (28 U.S.C. § 2254(d)). As such, the Court recommends that habeas corpus relief with regard to this claim be DENIED.

---

[5] *People v. Sapp*, 31 Cal.4th 240, 279 (2003); *see also People v.Gray*, 39 Cal.4th 168, 215 (2005); *People v. Seaton*, 26 Cal.4th 598, 635 (2001); *People v. Clair*, 2 Cal.4th 629, 664 (1992).

1

                    *c.*      ***The Prosecutor's Comments Regarding Facts Not in Evidence***

2           In the closing arguments, the prosecutor argued that Petitioner's version of events did not make

3  sense, specifically his story about the Elk's Club barbecue as to why he was in the area where he was

4  apprehended. The prosecutor made the point that with all the police activity in responding to a hot

5  burglary call, with sirens and radios blaring, officers yelling, and lots of excitement, no one came over

6  from the large family barbeque to which appellant testified he was heading. (Lodgement 5, 4 RT 345.)

7  The defense objected that these were facts not in evidence, but the court overruled the objection noting,

8  "The prosecutor asked the question in that way. And Mr. Moore confirmed it in his response."[6]

9  (Lodgment 5, 4 RT 346.)

10         During the defense's closing argument, Petitioner's defense attorney, Carlos Acuna, attacked

11  the People's case by arguing that when Officer Seaman emptied appellant's pockets, he must not

12  have noticed the heart shaped penny, because it did not appear on the police inventory sheet: "Were

13  [where] is that in the inventory sheet? Where is that even inventoried? It was never there."

14  (Lodgment 5, 4 RT 357.) At this point, the prosecutor, Imperial County Deputy District Attorney

15  Eric Baker, objected. (Lodgment 5, 4 RT 357.) Mr. Acuna persisted: "It was never there."

16  (Lodgment 5, 4 RT 357.) Prosecutor Baker then said, "He's referring to evidence outside the record.

17  The inventory sheet was referenced, but never inserted in the record. And it is in the inventory

18  sheet." (Lodgment 5, 4 RT 357.) The court sustained the prosecutor's objection.

19         The Court of Appeals ruled that the prosecutor's comments about the circumstances of the Elks

20  Club barbecue were a matter of fair comment on the evidence, including reasonable inferences or

21

---

22       [6] The trial court overruled the defense objection because the prosecutor had asked that question and the information was confirmed by appellant in his response.

23       Q. So what did you see when you looked over there?
         A. I seen people over there barbecuing.

24       Q. Okay. Fair enough. Now, you're over there – these people are over there barbecuing. It's all kind of festivities. And suddenly, I assume, at some point, at

25       7:22, there are sirens blaring, police cars showing up, radios blaring. "'Stop, show me your hands.' Lots of excitement, correct?"
         A. Yeah.

26       Q. Nobody from across the street walks over to see what's going on?
         A. I don't even – you're asking me a question that I can't answer.

27       Q. Well, you were there. Did you see anybody?
         A. I was – I was there running. I wasn't – I mean, I'm in the back. How can I see if

28       somebody's coming across the street?
       (Lodgment 4, 3 RT 294-95.)

1   deductions that may be drawn from that evidence and had factual support in the record. (Lodgment 17,

2   p. 16.) With regard to Petitioner's claim regarding the inventory sheet, the Court of Appeals noted that it

3   was Petitioner's counsel, not the prosecutor, who made the comment and, therefore, Petitioner's claim

4   had to fail because it lacked support in the record. (Lodgment 17, p. 16.) Based upon the foregoing, this

5   Court finds the Court of Appeal's rejection of these arguments was not contrary to, nor did it involve an

6   unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

7   United States, nor was based on an unreasonable determination of the state court evidence (28 U.S.C. §

8   2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this claim be

9   DENIED.

10                        **d.        *The Prosecutor's Comments Appealing to the Passions of the Jury*

11          Petitioner's attorney also objected to the following statement made by the prosecutor:

12              I want you to keep in mind something else as you're evaluating the
                evidence in this case. I want you to keep in mind who are the victims in
13              this case and who is not. The victim in this case is not Mr. Moore. The
                victim in this case is Ms. Marquez. Gabriella Marquez. And I would
14              submit to you it's also Ms. Porcayo, who, as you could tell from her 911
                tape, was very involved in this case, and it had an impact on her.
15              (Lodgment 5, 4 RT 330.)

16          The Petitioner's counsel objected to this comment saying it was improper, but failed to specify

17   misconduct and did not ask for a curative admonition. The court overruled the objection.  The

18   prosecutor also made comments about Petitioner's prior felony convictions and the defense did not

19   object. (Lodgment 5, RT 342, 348.)  Because Petitioner's counsel failed to state the grounds for his

20   objection for the first instance and failed to object at all for the second instance, the Court of Appeal that

21   Petitioner's claim of error was waived.  (Lodgment 17, p. 17-18.)  These claims of prosecutorial

22   misconduct were procedurally defaulted under California law, for failure to properly object As such, this

23   Court finds the Court of Appeal's rejection of this claim on the merits was not contrary to, nor did it

24   involve an unreasonable application of, clearly established Federal law, as determined by the Supreme

25   Court of the United States, nor was based on an unreasonable determination of the state court evidence

26   (28 U.S.C. § 2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this

27   claim be DENIED.

28   ///

1

    *e.*      ***Petitioner's Claims of Cumulative Error for Prosecutorial Misconduct***

2      The Petitioner argued in the California Court of Appeals that the cumulative effect of the

3  prosecutor's numerous acts of misconduct was prejudicial and deprived him of a fair trial.  However, the

4  Court of Appeals stated that under the doctrine of cumulative error, in determining whether reversal of

5  the judgment is required, the court must look at whether the Petitioner received due process and a fair

6  trial.  The Court of Appeal stated,

7            "We identified only one matter that was even arguably error, namely, the
             prosecutor's reference to his belief about the police officers' credibility,
8            and as to that matter the claimed error was harmless. That, and
             overwhelming evidence of Moore's guilt, which he does not challenge,
9            easily permits us to conclude there was no cumulative error in this case."
             (Lodgment 17, p. 19.)
10

11      The Court of Appeal's concluded that there was no prosecutorial misconduct, but that even

12  if there were, any error was harmless in light of the overwhelming evidence of Petitioner's guilt,

13  each of these prosecutorial misconduct and evidentiary errors individually were harmless,[7] and their

14  cumulative effect did not deprive Petitioner of a fair trial.[8]  The Court agrees.  The Court of Appeal's

15  findings were not contrary to, nor did they involve an unreasonable application of, clearly established

16  Federal law, as determined by the Supreme Court of the United States, nor were they based on an

17  unreasonable determination of the state court evidence (28 U.S.C. § 2254(d)).  As such, the Court

18  recommends that habeas corpus relief with regard to these claims be DENIED.

19       **3.**    ***Petitioner's Claim That the Twenty-five Years to Life Sentence for Un-***
                   ***aggravated Burglary Constitutes Cruel and Unusual Punishment under the***
20                 ***California and United States Constitutions***

21      The Petitioner contends in ground five that the imposition of twenty-five years to life in prison

22  where the only criminal act was an un-aggravated burglary constitutes cruel and unusual punishment

23  under the California and United States Constitutions.  Respondent argues that this claim must fail in

24

25

26

27      [7] *See United States v. Daychild*, 357 F.3d 1082, 1099 (9th Cir. 2004); *United States v.
    Arambula-Ruiz*, 987 F.2d 599, 605 (9th Cir. 1993).
28

        [8] *See United States v. Payne*, 944 F.2d 1458, 1477 (9th Cir.1991).

light of the United States Supreme Court's decisions in *Lockyer v. Andrade*,[9] and *Ewing v. California*,[10] and  the California Court of Appeal's rejection of Petitioner's claim, which complied with 28 U.S.C. § 2254(d).  Respondent argues that in Ewing, the defendant was convicted of grand theft, a "wobbler" offense under California law, and was sentenced to twenty-five years to life under the Three Strikes Law.  His prior "strikes" included three burglaries and a robbery. *Ewing*, at 18-19. A five-justice majority concluded the sentence did not violate the Eighth Amendment's a "narrow proportionality principle" applicable to non-capital cases, which prohibits only extreme sentences that are grossly disproportionate to the crime. *Ewing*, at 30-31.  Respondent argues that in applying that principle to a recidivist sentencing scheme, both the current offense and the defendant's prior criminal record must be considered.  Respondent contends that deterring and incapacitating recidivist felons, regardless of the gravity of the new felony, is a legitimate basis for enhanced punishment and that state legislatures are entitled to deference in crafting punishments. *Id.* at 29-30.

The Respondent also cites to *Andrade*, where the petitioner was convicted of two counts of petty theft with a prior and was sentenced to two consecutive terms of twenty-five years to life, in effect fifty-five years to life, under California's Three Strikes Law.  *Lockyer v. Andrade*,  538 U.S. 63, 67-69 (2003).  The Supreme Court held that the state appellate court's rejection of an Eighth Amendment challenge to his sentence did not contradict or unreasonably apply clearly established federal law as determined by the Supreme Court, within the meaning of 28 U.S.C. § 2254(d). *Id.* at 72-73.  The Supreme Court noted that its prior decisions[11] left the precise contours of Eighth Amendment proportionality unclear, and that the state court's ruling was not contrary to or an unreasonable application of those decisions. *Id.* at 75-76.

In the instant case, taking into account the fact that the Petitioner was forty-one years old at the time of the crime, was abusing drugs and his criminal record demonstrated a history of repeatedly committing residential burglaries, the California Court of Appeal found that Petitioner's sentence did

---

[9] 538 U.S. 63 (2003).

[10] 538 U.S. 11 (2003).

[11] *Rummel v. Estelle*, 445 U.S. 263, 271-72, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), *Solem v. Helm*, 463 U.S. 277, 303, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991).

not constitute cruel and unusual punishment under either the California Constitution or the Eighth Amendment of the U.S. Constitution.  This Court agrees.  The Court of Appeal's findings were not contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor were they based on an unreasonable determination of the state court evidence (28 U.S.C. § 2254(d)).  As such, the Court recommends that habeas corpus relief with regard to this claim be DENIED.

###    B.    Petitioner's Claims 3 and 4

The Petitioner argues in claim three that because he was not allowed to exercise his right to allocution, he must be re-sentenced and in claim four, the Petitioner contends that the trial court abused its discretion in failing to dismiss strike priors.  Respondents argue that claims three and four fail to present a federal question.

###    1.    Petitioner's Claim that He Must Be Re-sentenced Because He Was Not Permitted to Exercise His Right Of Allocution

The Petitioner argues that the denial of his right of allocution was not harmless and his case should be remanded for re-sentencing, because if he had been allowed to speak, he argues that there was a reasonable possibility of a more favorable sentencing outcome.  (Pet. at 35-38.)  At the Petitioner's sentencing, the trial court only communicated with his counsel and the prosecutor and did not ask Petitioner if he had anything to say.  The Petitioner did not request to say anything at the sentencing hearing.

The Supreme Court has recognized the importance of the right of allocution in *Green v. United States*,[12] however, the Court concluded in *Hill v. United States*,[13] that a sentencing judge's failure to ask a defendant if he had anything to say, although a violation of Rule 32(a)(1)(C) of the Federal Rules of Criminal Procedure, was not an error of Constitutional dimension and could not support a writ of habeas corpus.  The right to speak on one's behalf at sentencing was given Constitutional status by the Ninth

---

[12] 365 U.S. 301, 304 (1961).

[13] 368 U.S. 424 (1962).

1  Circuit in *Boardman v. Estelle*,[14] but only where a defendant requests an opportunity to speak to the

2  court, but such request is denied. The Ninth Circuit applied the harmless error analysis and found that

3  the denial of the right of allocution to be an error in the conduct of the trial, not a structural defect in the

4  trial process, and as such one that may be treated as harmless. *Id.* at 1530.

5        While the California Supreme Court is currently considering whether there is a denial of due

6  process if the trial court refuses an affirmative request by a defendant to speak at sentencing,[15] where

7  there is no such affirmative request, as is the case here, the right of allocution is further called into

8  question, especially where the defendant is represented by counsel who is charged with addressing the

9  Court on the defendant's behalf.  *See People v. Cross*, 213 Cal. App. 2d 678, 682 (1963).  Because the

10 Petitioner did not ask for, and the trial court did not refuse him an opportunity to address the court at

11 sentencing, the Respondent contends that Petitioner's claim is based solely on California law and

12 therefore fails to present a federal question.  The Court agrees.  The Court of Appeal's findings were not

13 contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as

14 determined by the Supreme Court of the United States, nor were they based on an unreasonable

15 determination of the state court evidence (28 U.S.C. § 2254(d)).

16       In conducting habeas review, a federal court is limited to deciding whether a conviction violated

17 the Constitution, laws or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see*

18 28 U.S.C. § 2254(a).  Habeas relief is not available for an alleged error in the interpretation or

19 application of state law.  *Estelle v. McGuire*, 502 U.S. at 67-68; *Jammal v. Van de Kamp*, 926 F.2d 918,

20 919 (9th Cir. 1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989)("the availability of a claim

21 under state law does not of itself establish that a claim was available under the United States

22 Constitution"). A federal district court does "not sit as a 'super' state supreme court" with general super-

23 visory authority over the proper application of state law.  *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir.

24 1986); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(federal habeas court must respect state court's

25 application of its law); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990)(federal court has no authority

26

27     [14] 957 F.2d 1523, 1530 (9th Cir. 1992).

28     [15] *People v. Evans*, 135 Cal. App. 4th 1178, 37 Cal. Rptr. 3d 852 (2006), *review granted* April 26, 2006, S141357.

to review state's application of state law).  Instead, federal courts may only intervene in state judicial proceedings to correct errors of federal constitutional magnitude.  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989)(stating that federal courts are not concerned with errors of state law unless they rise to level of constitutional violation). A federal habeas corpus petition must allege a deprivation of one or more federal rights to present a cognizable claim pursuant to § 2254.  As such, the Court finds that ground three of the Petition fails to present a federal question and, therefore, recommends that habeas corpus relief with regard to this claim be DENIED.

> ## 2. *Petitioner's Claim That the Trial Court Abused its Discretion in Failing to Dismiss Strike Priors*

The Petitioner contends the trial court abused its discretion in balancing the relevant factors in determining whether the Petitioner's strike priors should have been dismissed under California Penal Code section 1385(a). The Respondent argues that because this issue is based solely on California law, ground four of the Petition fails to present a federal question for this Court to review.  The Court agrees. As set forth above, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States and  habeas relief is not available for an alleged error in the interpretation or application of state law.[16]  As such, the Court finds that ground four of the Petition fails to present a federal question and, therefore, recommends that habeas corpus relief with regard to this claim be DENIED.

### C.    *Petitioner's Claims 6 and 7*

The Petitioner makes two claims of ineffective assistance of counsel, one for his defense counsel because he did not challenge the sufficiency of "the [California Penal Code section] 969(b)" package which was used to prove up his prior convictions, and one for his appellate attorney who did not raise the insufficiency claim or assert the incompetence of Petitioner's trial counsel for failing to raise the sufficiency claim.  The Respondent argues that the Petitioner has not shown that he had incompetent counsel or that he was prejudiced by ineffective assistance of counsel.

---

[16] *Estelle v. McGuire*, 502 U.S. at 67-68; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989)("the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution").

1    In order to prevail on his claim of ineffective assistance of trial counsel, Petitioner must

2    "overcome a strong presumption that counsel 'rendered adequate assistance and made all significant

3    decisions in the exercise of reasonable professional judgment,' and establish that [counsel's]

4    performance was 'outside the wide range of professionally competent assistance'." *Clabourne v. Lewis*,

5    64 F.3d 1373, 1377 (9th Cir. 1995) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).  Even

6    if Petitioner establishes that the legal assistance he received at trial was inadequate, Petitioner must go

7    further and demonstrate prejudice as a result of the actions of counsel.  In this context, prejudice means

8    that Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors,

9    the result of the proceeding would have been different.  A reasonable probability is a probability

10    sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  As such, the Supreme

11    Court requires that the Petitioner establish both objectively unreasonable deficient performance and also

12    prejudice.[17]

13    In evaluating a claim that counsel's performance was deficient, a federal habeas court "must

14    indulge a strong presumption that counsel's conduct falls within the wide range of reasonable profes-

15    sional assistance . . . ." *Id*. at 689.  Even if counsel's conduct is found to be deficient, "[t]he defendant

16    must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

17    of the proceeding would have been different.  A reasonable probability is a probability sufficient to

18    undermine confidence in the outcome." *Id*. at 694.  The court need not address both the deficiency and

19    prejudice prongs if the defendant fails to make a sufficient showing on either one.  *Id*. at 697.

20    This Court concludes that the record does not contain a factual basis to sustain either of

21    Respondent's burdens to demonstrate deficient performance or prejudice.  Given the overwhelming

22    evidence,[18] it is difficult to imagine what possible exculpatory evidence Petitioner's counsel could have

23    obtained from the investigation Petitioner claims should have been conducted.  The Court is similarly

24    unmoved by Petitioner's claims of ineffective assistance of counsel on behalf of both trial and appellate

25

26        [17] *Bell v. Cone*, 535 U.S. 685 (2002); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

27        [18] Petitioner was seen attempting to break into the victim's apartment and police responding to
28    the call confronted the Petitioner inside the apartment and Petitioner ran past them and led them on a
foot chase, which ended in his capture and arrest.  Officers later found a distinctive coin in Petitioner's
front pocket, which the victim identified as her property. (Lodgement 17).

1  counsel for failing to require sufficient proof of his prior convictions, since the Petitioner had a long

2  history of prior convictions for residential burglaries.[19]  After the jury found the Petitioner guilty, the

3  trial court relied upon Petitioner's prior prison records and found the allegation that Petitioner had

4  suffered prior convictions to be true.  Petitioner's counsel had no objection. (Lodgment 5, 4 RT 400.)

5  The trial court followed the procedure set forth in Penal Code section 969b in determining the

6  truth of the allegations concerning prior convictions. Section 969b provides that "records or copies of

7  records of any state penitentiary, reformatory, county jail or city jail, or federal penitentiary in which

8  [defendant] has been imprisoned" may be used to establish prima facie evidence of prior convictions,

9  provided "such records or copies thereof have been certified by the official custodian of such records . ."

10  The statute thus creates an exception to the hearsay rule. Evidence other than the record of conviction

11  may not be utilized to prove that a defendant's prior conviction met the definition of a "serious felony"

12  within the scope of the "three strikes" law. *People v. Scott*, 102 Cal. Rptr. 2d 622, 85 Cal. App. 4th 905

13  (2000).

14  Under California law, this prison package is the usual way a defendant's prior criminal history is

15  be proved in terms of the three strikes law and any objection to it or to its sufficiency in proving up that

16  criminal history would likely have failed. As such, Petitioner's trial and appellate counsel were not in

17  competent for failing to object to the sufficiency of these records to prove the prior convictions.

18  Petitioner raised this issue in his petition for writ of habeas corpus to the California Supreme Court.

19  (Lodgment 19.). That petition was denied by the California Supreme Court without comment.

20  (Lodgment 21.)

21  The Respondent argues that the Petitioner cannot demonstrate ineffective assistance of counsel

22  or prejudice and the Court agrees.  As such, the Court finds that grounds six and seven of the Petition

23  fail to demonstrate ineffective assistance of counsel or prejudice and, therefore, recommends that habeas

24  corpus relief with regard to this claim be DENIED.

25  ///

26

27

28

---

[19] Petitioner's criminal is as follows: 1980 conviction for grand theft; 1983 conviction for second degree burglary; 1984 conviction for first degree burglary; numerous violations of probation and parole; 1991 conviction for first degree burglary; 1993 conviction for second degree burglary; 1996 conviction for second degree burglary; 1999 conviction for first degree burglary; and 2003 conviction for first degree burglary.

1   ### D.      Petitioner's Claim 8

2   The Petitioner claims in ground eight of the Petition that the trial court's imposition of a

3   twenty-five-years-to-life sentence breached his 1991 plea bargain which guaranteed him only a

4   one-to-five year enhancement for any future criminality. The Supreme Court has held that a criminal

5   defendant may obtain relief where the state breaches a plea agreement. *Santobello v. New York*, 404

6   U.S. 257 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the

7   prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be

8   fulfilled." *Id.* at 262.

9   To the extent that the Petitioner contends that his right to due process was violated because the

10  government breached the plea agreement in his 1991 conviction, this contention lacks merit. The

11  Court's review of reporter's transcript of the felony change of plea enter against the Petitioner on April

12  22, 1991, reveals on page 4, lines 17 through 25:

13
> The Court: Other than what we've discussed about dismissing these other
14
> serious felony allegations which could add, each of them, five
> more years to the sentence, other than dismissing those, other than
15
> telling your attorney that I would hold a CRC or 3051 hearing,
> other than that have there been any other promises that have been
16
> made to you that haven't been mentioned right here in open court
> in order to get you to change your plea?
> The Defendant: No, there haven't.

17

18  Later on in the change of plea, the Court informs the Petitioner that his 1991 conviction could

19  have the effect of adding an additional five years to any later serious felony that he might commit and

20  the Petitioner acknowledged that he understood. *See* Reporter's Transcript of the Felony Change of Plea

21  for the 1991 Conviction, at 7, lines 17-24. As such, in Petitioner's 1991 plea, the parties never agreed

22  that Petitioner's conviction would not be charged as a serious felony, and further, the plea agreement did

23  not limit the resulting collateral effects of the conviction. Applying a presumption of correctness to the

24  California courts' findings of fact, we cannot say that this determination was contrary to, or an

25  unreasonable application of established federal law. See § 2254(e); *United States v. Serrano*, 938 F.2d

26  1058, 1061 (9th Cir.1991) (stating that in determining whether a plea agreement has been broken, courts

27  look to what was reasonably understood by the defendant when he entered his plea of guilty).

28

To the extent this claim rests on a violation of California law, it is not cognizable in these proceedings. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed.2d 606 (1990) "[F]ederal habeas corpus relief does not lie for errors of state law."). For these reasons, the California courts' rejection of these claims was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, nor was it based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Hill, 472 U.S. at 455, 105 S. Ct. 2768; Sass, 461 F.3d at 1129.

### III.    Petitioner's Request For An Evidentiary Hearing

Petitioner has requested an evidentiary hearing in this case, however, an evidentiary hearing is not grantable as a matter of course, is only allowable when certain requisite facts appear which render it, in the Court's discretion, necessary to adduce additional evidence or factual circumstances for the granting of a writ of habeas corpus.  The initial question presented to a district judge is whether the petition alleges a deprivation of constitutional rights which would entitle the petitioner to be released from state custody. This determination must be made upon the papers presented to the trial judge. If such allegations have been made, and if a dispute as to the facts appears either on the face of the petition and supporting papers or from the facts alleged in the return, only then must the district judge determine whether a hearing is necessary to resolve the dispute. *Cf. Townsend v. Sain*, 372 U.S. 293, 309 (1963); *U.S. ex rel. Ross v. McMann*, 409 F.2d 1016, 1037-1038 (2nd Cir. 1969). The trial court's exercise of discretion can only be tested in the light of the reasons disclosed at the time the motion was heard and not on the basis of more elaborate representations argued on appeal. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

A federal court may be required to hold a hearing if, among other factors:  (1) the fact finding procedure employed by the state was not adequate to afford a full and fair hearing; or (2) the petitioner did not receive a full, fair and adequate hearing; or (3) the state court record was not sufficient to support the state court findings.[20] When a petitioner fails to develop a material fact in a state court proceeding, an evidentiary hearing will not be held on federal habeas review unless the petitioner can

---

[20] *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004); *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992); *see also Ford v. Wainwright*, 477 U.S. 399, 410-11 (1986)(plurality opinion); *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963); 28 U.S.C. § 2254(d)(2), (d)(6) & (d)(8).

demonstrate cause for failing to develop the fact, and prejudice resulting from that failure, or demonstrate that a fundamental miscarriage of justice would result from failure to hold a federal hearing. *Keeney v. Tamayo-Reyes*, 112 S. Ct. 1715, 1721 (1992).

Respondent argues that the Petitioner is not entitled to an evidentiary hearing for any of the allegations set forth in the Petition. Because the Petitioner does not dispute any of the facts as presented to the trial court and all of his claims are based on the appellate record and were reasonably denied on the merits by the California Supreme Court, the Court finds that an evidentiary hearing is not warranted and therefore recommends that Petitioner's request be DENIED.

## *Conclusion*

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgement be entered denying the Petition.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties ***on or before March 14, 2008***. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed ***on or before March 24, 2008***. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


DATED: February 27, 2008

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court